Thank you, Your Honor. May it please the Court, Mr. Gamble, Ms. Daly-Owen, and Mr. Lorenz. My name is Jim Nicholai, and I represent the defendant in this case, Alvin Jaeger, the Secretary of State for the State of North Dakota. I'd like to start by emphasizing an argument that I don't think I emphasized enough in my briefs. I made the argument in my original motion for stay at page 39, and in the merits brief at page 35, and that was the point about the district court's order basically permitting unlimited forms of identification that could be used to vote in North Dakota as long as they contained a P.O. box or other mailing address in North Dakota. So I have in my hand a piece of paper, and it's handwritten, but it has a name, and it has a date of birth, and it has a North Dakota P.O. box on it. And I'm not sure what would prevent someone from using this document to vote in North Dakota, and North Dakota doesn't require photo ID, so there's no way to link the name on page 35, North Dakota P.O. box 478. The district court didn't limit the form of identification to a government document, which is what North Dakota law otherwise required, that has the reliable indicia of someone having in their possession a document issued by a governmental entity. And the other thing that I didn't point out is that it prevents North Dakota from establishing the qualification that someone be a U.S. citizen, which both of the forms that we currently have, we can use to establish that, because North Dakota driver's ID and U.S. citizen, someone can get one of those documents without being a U.S. citizen, but it's noted on there as required by statute, as we noted in our brief. And a person who possesses a tribal ID that's been issued by a federally recognized tribe within the borders of the state of North Dakota, that would also indicate U.S. citizenship. And I could put any name on here, it doesn't have to be my name. Are you reading then the most recent preliminary injunction when it says another form of identification is just a piece of paper? Well, Your Honor, let me ask you this. What would permit the Secretary of State from rejecting this as a form of identification? It has the three criteria that we require. If you take out our requirement that you have a current residential street address, the other identifying information that we require a form of identification to include is name, date of birth, and current residential street address. That's what we identify as the identifying information, the minimal identified information a voter must present on the day of an election to the court did not limit it to another reliable type of information. I mean, what would prevent or what would permit the Secretary of State or a North Dakota poll worker from rejecting this as a form of identification? Would you find it acceptable if it was a form of identification that the person submitted that did not have the residential street address, but then was supplemented with the post office box information? No, Your Honor. So you don't think that the post office box identification is proper in any shape or form? No, Your Honor, and that's because it itself, if the district court was going to find and if this court finds that some sort of injunctive relief is appropriate, it can't be in a type of relief that itself violates the Constitution, and that's what identifying a P.O. box as the place where a person can vote does, because it permits non-residents to vote. You don't require state residency to obtain a P.O. box in North Dakota, and it permits residents to vote in the wrong precincts, and the other thing that's improper about it with respect to regardless of what this court may feel or ultimately decide on the merits is the lack of irreparable harm by these six plaintiffs, because none of them depend upon a P.O. box to vote, and so you have a type of remedy that itself violates the Constitution by permitting invalid votes to dilute the votes of valid voters throughout the state, and that was demonstrated by just four invalid votes that ended up being cast in the June election. That's that you know of, right? That's that we know of. You have incomplete data on that, right? It's incomplete only to the extent of 10 voters, so 115,216 voters we've confirmed that they had residential street addresses, including the six that voted pursuant to the P.O. box injunction. Four of those six voted in a precinct other than where they reside, because their P.O. box is located in a precinct other than where they reside. Two of those voters, their P.O. box happened to be located in the same precinct. When you use the word reside, you mean 30 days in one place, right? That's one way, Your Honor, but it's not the only way. Counsel, isn't that the way your statute and Constitution define it? No, because a voter could have a place where they resided for 30 days, and they are permitted to because residency requires union of act and intent. And that's set forth in North Dakota Century Code 5401.26. So, for example, let's use the example of a farmer who has a home in town, and he has his homestead, you know, the original farm place out in the country. And both of those are residents that he receives mail at. Both are residents that he uses for some form of identification. And let's say that he spends most of the growing season on the farm outside town, and he spends most of the rest of the year in town. He could reside in town when harvest is done, and he's lived there 30 days immediately preceding the election, when the November election comes. But he considers the homestead outside town to be the place that he considers his voting residence. So, he could still vote in the precinct that's out of town, notwithstanding the fact that he also has the choice of electing to say, well, no, my house in town is where my intent is that I reside now. That would be the unusual circumstance, wouldn't it? Aren't most of the examples that we're referring to someone who either is transient, perhaps temporarily homeless, and then getting a residence? But the two-residency example that you've provided doesn't seem to be particularly common, at least for purposes of this litigation. Well, I think it's very common in North Dakota. There are a lot of what are called snowbirds who live half the year in Arizona or Florida and half the year in North Dakota. Well, I guess for purposes of this litigation, however, we're talking about a different type of situation where someone is homeless or perhaps not able to stay in one particular spot as long as necessary to establish a residency such that they can get it on an ID. Well, let's go through one by one each of the individual plaintiffs in this case because where the analysis has to start is with standing. This court took an oath or each member of this court took an oath to uphold the Constitution when they took the bench and standing requirement, the requirement that someone have an actual case or controversy before them is a necessary part of that. And let me put it, let's think about this a little bit different with two different examples that will demonstrate, I believe, the lack of standing of all three of these six plaintiffs. One is, let's assume that they have standing, but then we need to determine whether this is a facial challenge or an as-applied challenge. And the first step in that inquiry requires this court to determine whether a facial challenge can be advanced by a plaintiff who has standing if they can show that it's unconstitutional under all circumstances. Well, we know, I know that I voted in the June election and this did not, having a residential street address requirement did not impose a burden on my vote. We know that the vast majority, almost 100% that we've verified of the voters who voted in the June election weren't burdened by that requirement. So I think you can accept as a premise that they can't show that that requirement is unconstitutional under all circumstances, which means we're limited to an as-applied challenge. And in an as-applied challenge, each individual, as the Supreme Court recently articulated again in Gill v. Whitford decision, they must show that their individual right to vote was burdened. And standing is not dispensed in gross. Plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief. So the form of relief that's most at issue and most critical to the Secretary is the form of relief of allowing people to vote pursuant to a P.O. Box. But do we look at the form of relief that the court gave in determining whether they have standing to begin with? Because I think there are cases, 11th Circuit, maybe a couple of others, where just submitting the photo ID, having the additional requirement of the photo, for example, photo ID was enough to establish standing. And here, as I understand it, the complaint is the residential street address on the ID. It doesn't have to be a big burden. Okay. Well, let's go through them one by one, Your Honor. And the most critical page is in the... ...itself enough of harm for standing, like in the Common Cause case and some others, that they could bring the case for, at least for standing, not for merits, but at least for standing. Well, under that argument, the four plaintiffs who initially indicated they lived in congressional districts that were affected by packing and unpacking in Gill v. Whitford would have been able to present the case because the Supreme Court recognized there was a harm. But they held no. These individual plaintiffs have to not only allege at the beginning of the case that they have harm, but they have to maintain that and prove it up at trial. And since they didn't, the Supreme Court said there was no standing. So if we go through these six plaintiffs, Mr. Brakebill at page 99 of the appellant's appendix, he admits he currently possesses a tribal ID that lists his street address. So how can he argue that he relies upon a P.O. Box to vote? He not only does not rely upon a P.O. Box to vote, but he actually has a tribal ID that he can use to vote. And the injury, the specific injury he says that he has is that his tribal ID will expire in August before the November election. That's not an injury. North Dakota law permits him to... Then he might be injured, wouldn't he, by the requirement that he have an ID. But I think your point is he has a residential street address, so he's not injured by the requirement that he have a residential street address. Yes, and he has both a residential street address without the state putting any burden on his ability to obtain that, and he has an ID he can use to vote without the state putting any burden on his ability to obtain that. I didn't understand your point about using expired IDs. The state seems very concerned about people voting without proper identification to show they're in the correct precinct, but you're telling us at the same time that a person can vote with an expired ID indefinitely, apparently, is your position? Yes, that's correct, John. So if you have an ID that expired 10 years ago... You list your current address, yes. You can still use it to vote, and here's the example. Let's say that... Where does it say it has to... You're saying if it's an expired ID that lists your current address, you can use it. Yes. Here's the example, Your Honour. Let's say that you have an elderly parent who still has a driver's license, but has now... no longer drives, and so that license expires, but that elderly parent still lives at the address where that expired license occurs, they can still use that to vote. Is there any method for verifying that that's the current residential street address in that situation? Yes, Your Honour. The central voter file would indicate if they have a driver's license, that information is in the Department of Transportation system, and it has to be shared by statute with the Secretary of State's office, which then finds its way into the central voter file. Maybe I've asked the question wrong, but I understand that the information from the identification would still be in the system, but how would there be a verification that the residence was still current for the individual person with a 10-year expired ID? Because they would show up at the precinct where they still live, and that precinct would... they would say... they would present the driver's license that has their current residential street address, and it would match the information that the state has in the central voter file, and they would be permitted to vote. When you say the central order file, what do you mean by that? The central voter file. What are they matching it up to, I guess, is my question. The address. The address. That they're actually attached to that person. Yes. You mean they're verifying this is where the person lived 10 years ago when he got the driver's license? No, they're verifying that it's still the information that the Department of Transportation has in their system, and it matches where they still live. How do they know it matches where they still live if all they have in the system is a 10-year-old driver's license? It's not just a 10-year-old driver's license. There might be a history of voting in each election between when that license expired. The key for the state is not to determine whether someone has a license that's non-expired or not. It's to determine that they still live at that address. And if they have a change of address, that address can be reported to the Department of Transportation and updated in the central voter file. If the license is expired, give the example again of the elderly parent, they can obtain a non-driver's ID that is... Yeah, that is not expired. Yes, that is not expired. That's what I thought the state would want so that they know the person is currently living at the address in the precinct. Yes, but it's not required. I don't know whether we should interpret this statute to include expired driver's licenses, but if it doesn't, then the injury would be Brakeville has to get a new license. But I thought your point was still that he has a street address and he's always had a street address. Well, Your Honor, the license, the ID that he has now, he obtained without any state-imposed burden. It was one that he obtained from the tribe because we offer him that choice. And we can't do anything about the fact that the tribe charged him $10 for that ID and he still has the option of getting a non-driver's ID free of charge from the state. The district court found that that cost money. Yes, that's incorrect, Your Honor. The district court cited the general statute that sets forth the fee and we pointed out in page 3 of our merits brief the exception that was passed recently in 2017 that is an exception to that that's found at North Dakota Century Code 3906.03.1 sub 4. The only time that a person has to pay for a non-driver's ID is for a duplicate or replacement card. The director of the Department of Transportation cannot charge a fee for the issuance of the original one or a renewal of an expired one because the statute makes those distinctions between issuance, renewal, or replacement. So if you lose your card, that's on you, you have to pay. But if you're required to obtain it initially, there's no charge. And to renew an expired one, there's no charge. And so the argument that North Dakota does not permit a totally free way of voting except for the underlying documentation that Crawford said was okay, the birth certificate, that's inaccurate. I see that I'm just about out of time. Well, let's add some time. Do you mind adding a little time, Judge Benton? No, no, of course not. We all came all the way over here for one case. We might as well give everybody enough time. Why don't you add another 10 minutes? And let me ask you this, Mr. Nikolai. I appreciate your argument about standing. So some of the arguments that we discussed might be hypothetical if they aren't matched up to an individual plaintiff. But to help understand the way the statute works, I think it would help if you could address some of what comes out of the briefs in terms of a person who doesn't have a residential street address. There are allegations in the briefs. I'm not saying any of the plaintiffs fit in this category, but the briefs seem to argue that on certain country roads on the reservations, there's no street sign, there's no street address. Or a homeless person might be set up in a park or a rest area or something like that and not have a residential street address. What about that concern? Well, I don't think you can disregard the standing requirement because... I'm not disregarding it. I'm just giving you a hypothetical that assumes there's somebody who has standing in this scenario. What would be the answer if we thought there was a case or controversy over that? I'll start with the homeless person. I do have to concede that there might be a limited number of homeless people who might have an injury caused by North Dakota's residential street address requirement. He'd have to be someplace for 30 days, right? Homeless for 30 days. No, Your Honor. Well, counsel, that's a requirement to vote in your state. A resident of the state who's resided in the precinct at least 30 days may be proceeding into an election. They'd be homeless for 30 days. No, but there can be cases where they can declare that I've been here for at least 30 days that becomes a... Or what if they set up camp at a place that doesn't have a number and street associated with it? Would that be another possibility? No, Your Honor, because there is no place like that. Underneath a bridge somewhere? This is the danger of having cases like this decided on a preliminary injunction record. What about under the bridge? The reality is that with North Dakota's harsh winter climates a person would not be able to survive under a bridge. Before the primary, 30 days. Okay, let's go back. Let me go back. Let's take Mr. Brakebill as an example. Mr. Brakebill is someone who didn't enter the state homeless. He had a residence. He does not lose that residence until he gains another. If he's living under the bridge, he can still use his former residence as his voting address. Let's say the bank foreclosed on his home. He's out of there. He doesn't claim that he lives there. He doesn't intend to go back. He intends to live under the bridge. Okay. Then if there is a permanent structure there for example, if he affixes his tent to a specific place, that property will have an identifiable street address. The central voter file has an entire grid. There's no place in North Dakota that's not part of the grid. The record that we cited... Okay, I understand your answer on the homeless person. What about the reservations and whether there are identifiable addresses at all locations there? Well, let's look at what the record contains. Exhibit 17 that we submitted in support of our renewed motion for stay contains the... That's not in the record. That's... Were you trying to put in new evidence on appeal? I'm talking about the record before the district court on the order that we're reviewing. Okay. There... I think then I just have to stand on my standing argument, Your Honor, that Elvis Northway does not fall within that category and this court can't speculate that there are people in North Dakota. You need an actual live person before you. Did Mr. Northway testify at a hearing in this case? No, Your Honor. Okay, so what we have is the allegations of complaint and this... I think it's 13 I don't know what it is, but it's a declaration of Elvis Northway filed May 6th. Right? That's what we've got on him to go on? Right, Your Honor. And also the... But you say he says he lives at Willow Street, right? There's an inconsistency in what Mr. Northway claims in his declaration and what's set forth in the in the complaint. Well, it's the evidence that matters, so if you look at Exhibit 13, he says he gets mail at Willow Creek, his utility bill. He lives in apartment number 1. So isn't that a residential street address? Absolutely, Your Honor. And he's lived there for... because he says he lived there since November 17th and he signed the declaration February of 2018, he's lived there for at least 30 consecutive days and can declare that to be his residential street address. And he can still do that if it's his intent because there has to be a union of act and intent that if he wants to vote in Duncey, he could use that address as his voting address because he regained that address that satisfies North Dakota's requirement after becoming homeless in Belcourt. But if he only views that as temporary shelter and that he has an intention to return to Belcourt at some point if he can, there's no impediment to him using his current tribal ID that lists his Belcourt residence. But more importantly, Your Honor, with respect to the P.O. Box injunction, Mr. Norquay does not rely upon a P.O. Box to vote. He relies upon a residential street address. That's still where he gets his mail. Can I ask you about the injunction in which the district court ordered the fail-safe. And the state did not appeal that, correct? That's correct. And that seemed to be the remedy that the plaintiffs originally were seeking. Am I right? But Your Honor, that itself is also an unconstitutional remedy because You didn't appeal it, counsel. No, we did not. But it's not in place anymore. The district court vacated it. And the district court didn't vacate that because of the new injunction. It vacated that because North Dakota changed the law. And so the change in law is what mooted the original injunction. But it's a different kind of fail-safe. The change in the law is what you're referring to is the sort of within six days after the election, you can come with the proper identification information? That's correct. The original fail-safe in North Dakota was affidavit declaration kind of system, correct? Yes, and there were at least three instances where North Dakota had bad circumstances that caused them to reconsider the soundness of allowing someone to self-authenticate that they're a qualified voter on the day of an election when that person before the state has actually been able to independently verify their qualifications is thrown into the mix of red pennies and blue pennies melted in the pot and can't thereafter be removed. And the November 2016 election established that there were over 3,800 votes that North Dakota still to this day hasn't been able to verify that the people who cast those votes were qualified. But that's what the statute originally allowed for, am I right? Yes. But when the district court essentially reinstated that with the first injunction you didn't appeal, but you're not here today saying that that's an acceptable remedy? No, it's not acceptable, Your Honor, and I believe the district court recognized that when it declined the plaintiff's request to reinstate it. Let me ask you this on another topic. I know you're mostly concerned about the residential street address but the briefs go back and forth about the part of the injunction that applies to the tribal IDs. Now, as best I can tell, there's not really a dispute about whether a letter from the tribe or something like that would be accepted by the secretary. The plaintiffs do dispute that, Your Honor. I understood them to say the statute doesn't allow for it, but they are happy with the injunction requiring it, and the state's position is the injunction is not necessary because the secretary is saying the statute already allows for it, is that correct or not? That is correct. I searched and searched for a case that said you're enjoined from enforcing the statute, but continue to implement it the same way. I know that's your position. The district court wasn't convinced that the statute allows for that sort of ID, but I'm just wondering what the fight is about. If you're willing to do what the injunction says, why don't you put five more minutes on there, Ms. Dino? If you're willing to do what the injunction says, what are we supposed to decide there? The fact that they prevailed on that issue when there was no necessity has consequences. It's an attorney's fees issue? Yes, and that's a real issue. I understand. I just want to know what the fight is about. I have another question about the motion that's pending now, or several motions, but the motion for stay. When it came up in late May, early June, the court denied the motion citing the authorities about changing the rules close to an election, and we invited or said the state was free to file a renewed motion when the briefing was completed. The briefing was completed on July 17th, but there was no motion filed then for another month. Now, by the time the response and the reply come in, we're past Labor Day. What is the general election? When does early voting begin? What other things happened before November 8th that we need to know about to decide whether you've run into the same problem with delaying too close to the election? Your Honor, let me first say that we needed to gather information, and that information needs to be gathered in conjunction with the election. I think that was possibly your problem. You thought you were going to present new evidence on appeal instead of just renewing the motion about the district court's order based on the record that was made in the district court, and that apparently led you to wait a month. That's beyond us now. I'm interested in the timeline so we can assess whether that's a concern or not. The first critical it's not so critical because it probably won't be affected by the presence of the injunction is the military and overseas ballots, and that has to be made available, I think, as early as September 21st. September 23, I think the papers say. Maybe it's September 21. Do they have to do anything with regard to residential street address? It probably would not be affected, Your Honor. The next critical deadline would be the one for when we have to make mail-in and absentee ballots available, and that would be September 27. Then the more critical deadline is what we ran into with the first order would be when we have to certify the elections manual for the November election in order that the training can begin, and that deadline is October 5th. That's the manual that the Secretary of State sends out to all the county auditors? Right, and it has to be approved first. It has to be submitted to the Attorney General, Mr. Stengem, and then approved by him before we have our final training that can take place pursuant to that certified elections manual. Well, does that mean it's too late now to change the rules, or how much time does it take to get the manual ready before October 5th? Well, the first time we were ready to change it on a moment's notice, if need be, and I think we could do that again now, so this court, the critical date would be October 5th, which is about a month away. A moment's notice, all right, because you had this filing in the how it takes two to three months to prepare the manual, and then three to four weeks for the Attorney General to proof it, and I thought you said in your reply that that timeline is still accurate. Yes, and it still is, Your Honor. Well, then how can you do it on a moment's notice, is my question. Well, we would find a way to do it on a moment's notice if we got relief, Your Honor. If we don't get relief, the elections manual that was used for the June election could still be reused for What about the absentee and mail-in ballots? You said something happens on September 27th. That's the date that the state has to make those ballots available for people who request them. So does that person who requests one have to comply then with either the statute or the injunction to get a ballot? Yes, that would be true. You have in-person, what I would call in-person absentee ballot, right? Where you certify you're going to be able to state the day of election, but you come in September 28th and say you want to vote? No, you don't have to come in September 28th. Yeah, but can you come in on that? Yes, you can request an absentee. Is the in-person voting as early as the 27th of September by absentee? You could fill out one, and they could give you a ballot, and you could give them the ballot back. Okay, so isn't that really the date, September 27th? Because you have to know then when the person shows up whether that person can qualify with what Judge Hovland says or whether that person has to qualify under the statute. Yes, Your Honor, but the people who vote, I mean, it's just the practical circumstances of the people who take advantage of the absentee and mail-in ballot are not likely to require a PO Box. Do they have six days after the election to show their qualifications to people who vote on September 27th or 28th? No, they would have to show that at the time they request the... Is that what the statute says? I thought the statute said six days after the election. That's for someone who shows up on the day of an election that doesn't satisfy the criteria. So that doesn't apply to in-person absentee voting? I'm not sure I'm confused, Your Honor. Well, you know, you show up, you say, I'm going to be on vacation November 8th. I want to vote now. You've got no registration. No valid form of ID. Can they vote? It's set aside and you determine six days after the election or not? They don't need to, Your Honor. They still have all the time between September 27th and November 8th. I'm talking about your end of it, not the voters end of it. I'm talking about the supply, not the demand. Yeah, that's what I'm referring to as well, Your Honor. If someone comes in on the very first day they can submit an application and that application is deficient, the county auditor can tell them, no, this doesn't... this application doesn't comply with the statute. What we need to issue you a ballot. So they wouldn't give them a ballot at all? Is that your answer? At that point, but they have between then and the election to make a valid application. Yeah, I understand. But I thought Judge Benton was positing that they would get a ballot, return the ballot, and have six days to come in with the supplemental documents, but you're saying the auditor wouldn't even give them the absentee ballot. Well, they wouldn't need to come back if they submitted a valid application. Well, we know that. That's why we're giving you a hypothesizing application that comes up short. Yes, then they would be told, they would be instructed, this application does not satisfy the criteria we need to give you a ballot, but you have between now and November 8th or November 6th, whatever the date is, I can't remember now, to submit, here's the information that you need that's missing from your application. As long as you submit the application, we will give you a ballot. So there's no need, the six days is for those people who wait all the way until the end, still don't have their ducks in a row, and we give them another six days. The people who are using an absentee or mail-in ballot have a more extended period of time to get their ducks in a row. I guess, does that make sense? Okay, thank you for your argument. Thank you. Mr. Campbell, we'll hear from you. Please put the total amount of time that we have. I think we have given him five more minutes after the first ten, so it should be 35, not 33. Thank you. May it please the Court, Your Honors, Matthew Campbell, Attorney for the Native American Rights Fund, on behalf of the Plaintiff Appellees in this matter. The District Court did not err in concluding that North Dakota's laws impose substantial burdens on the right to vote, and require an interest in property in order for one to be qualified to vote. There's an abundance of evidence in the record that supports the District Court's factual findings with regard to standing, with regard to the lack of residential addresses on the reservations in North Dakota, and with regard to the substantial burdens on the right to vote. There's evidence from the plaintiffs, from expert witnesses, from other voters impacted in North Dakota, as well as from tribal leaders on the impact these laws have on their community members in North Dakota. Therefore, the District Court's factual findings are not clearly erroneous in this matter. Why don't you start with standing, if you would, because if all six people have residential street addresses, how do they have standing to challenge the constitutionality of a requirement that one be... Yes, Your Honor. The plaintiffs in this matter have at least six burdens imposed on them that are sufficient for purposes of standing. What the record shows is that Elvis Norquay doesn't currently have a qualifying voter ID with his current residential address, nor currently has any documentation with a residential address. All of the voters, all of the plaintiffs in this action, must maintain a fixed permanent dwelling, and that dwelling must have a residential address. All the voters must obtain voter IDs. They also must present voter IDs to vote. Well, that might give them standing to challenge the ID requirement, but I'm talking about the street address requirement. You say Norquay doesn't have an ID that lists his current street address, but he has a current street address, according to his affidavit. Isn't that right? Your Honor, in a facial challenge, what we're alleging is that in order to vote, one must have a fixed permanent dwelling with an address, and Mr. Norquay shows how burdensome it is to maintain a fixed permanent dwelling with an address. He's been in and out of homelessness. In order to maintain a dwelling, all of the plaintiffs had to either pay rent, utilities, find a dwelling that has an address, and then not only that, but they have to list it on their ID. So it's not just maintaining an address and a permanent dwelling with an address. You also have to have it on your identification, and in order to legally change your residence from one precinct to another, it's not enough that you have found a new residential address. You actually have to have documentation showing that, and what the record shows is that... So he could challenge whether he should be required to get an ID, but why does he have standing to argue that he should be allowed to use a P.O. box because he doesn't have a residential street address when he has one? He says he gets mail at Willow Street, apartment number one. Yes, Your Honor. The ability to pay a poll tax doesn't mean someone doesn't have standing to challenge a poll tax. It's actually the imposition of the fee or the burden on the right to vote that provides the standing. But the state didn't require him to get an address. He already had an address. Well, Your Honor, Mr. Norquay... ...to get an ID, maybe, and that would be... Well, Mr. Norquay, and all the plaintiffs have to maintain an address, whether it's through paying rent or paying utilities. Have any of them alleged that but for the statutory voting requirement, I would not have an address? No, I don't believe... I don't understand anybody alleging the statute causes them to maintain an address. They all have addresses, as I understand it, and they're not alleging that but for the voting statute, I would abandon my address. That's right, Your Honor. They're not alleging that they don't have addresses. Mr. Elvis Norquay has been in and out of homelessness for the last several years, and so he's had this burden that is required and in order to be qualified to vote, he has to satisfy that burden. And it's on the face of the statute that he has to have a permanent dwelling with an address. It's something that's facially invalid, and merely maintaining and being forced to have that to be qualified to vote is sufficient for purposes of standing to attack the law in a facial manner, Your Honor. North Dakota requires the residential street address to be on the valid ID, correct? Yes, Your Honor. It does require the... And it has to be a current one? It should be valid. What other states in the Union, if you know, require a current residential street address on a valid ID for voting purposes? I don't know of any other for purposes of voting. Many other states have ID requirements, but they don't necessarily require you to have your residential street address for them to be considered valid for purposes of voting. So is North Dakota alone in this requirement to have that on the identification? You know, I don't know the answer to that. I believe so, but I don't know for certain. Many states have registration requirements, and if you don't change your registration of a certain day, 30 days is typical, due to Dunn v. Blumstein, you don't get a vote. So for you to say North Dakota is completely wrong in that and having a show-up voting system, I think you're misleading us, Counselor. Well, I think what you see with regard to registration is there are at least 17 different states that have same-day voter registration, and Iowa is one example of that. If you don't have an ID and you don't have an ID, you can't bring someone with you to the polls that can vouch for you and allow you to vote without having your ID and your address. So given the severely burdensome nature of the laws, the state has to utilize less restrictive means before they can attempt to disenfranchise thousands of voters, and there are many less restrictive means to satisfy the state's interests. Counselor, back to Dunn v. Blumstein, you require somebody to live someplace 30 days or they can't vote. The Supreme Court said so, right? Yes, Your Honor. Okay, well, so I think that when you, your answer to Judge Kelly is a little misleading in terms of how elections really work. Well, you know, again, I believe that the statute here is more restrictive than any of the voter ID laws that have been presented before this Court. All the other laws had fail-safe provisions or had more voter IDs that were acceptable or the states there... How does the remedy that was most recently provided by the District Court, the P.O. Box remedy, how does that achieve what you're trying to get at here? Does it really meet the goal of your lawsuit? Well, what the P.O. Box remedy provides and what the District Court saw was that there are many Native people in North Dakota that have IDs that only have P.O. Boxes, and the District Court was concerned with the clear legal obstacle of the requirement that someone must maintain a current residential address and that it must be shown on their ID in order to be qualified to vote. How in that situation can the state be assured that the person is voting in the proper precinct? As I understand the point, there's some folks that their identification, they can only provide documentation to support the supplemental documentation is a P.O. Box, and that seemed to be the District Court's, one of the District Court's concerns. And I understand that part of it, but how do you address the problem that that then seems to create in not allowing the state to monitor whether someone is actually voting in the proper precinct? Your Honor, I think what our position is that the state misinterpreted the District Court's order. What we think is that it provided for a broader allowance of acceptable voter IDs, and it did not require the state to allow someone to vote out of precinct. The poll workers in the precincts can still ask someone where they live, and if the voter can then point on a map where they live within the precinct, and if where they point is outside the precinct boundaries, poll workers can then direct them to the correct address. So the fact that it requires the state to allow voters to vote out of precinct merely allows the voters to have more of a broader allowance of acceptable forms of ID. Well, if they can point to where they live, why can't, what's the burden in then producing the street address rather than the P.O. Box? And the P.O. Box presumably entails a fee that just having a residence doesn't. Sure, there was a factual finding made by the district court that there is a lack of residential addresses on the reservations in North Dakota, and there's sufficient evidence in the record to support that factual finding, so it's not clearly erroneous. The state has recognized on several occasions that Native American communities lack residential addresses. Mr. Silberman in 2011, Representative Marvin Nelson recognized in 2016 that Native American communities lack residential addresses in his district. We also have testimony from Russ McDonald, the previous chairman of the Spirit Lake Nation, as well as the treasurer and secretary of the Spirit Lake Nation that provides that on their reservation there are many homes that just simply do not have residential addresses. Is this testimony in this case before the district court? Yes, Your Honor. Thank you. Yes, and I can point to you where it is in the record if you'd like those citations. Sure, please do. Ms. Maya Pearson from the Spirit Lake Nation is on the plaintiff's appendix on page 190, describes the situation at Spirit Lake Nation. On the plaintiff's appendix at 201, Russ McDonald, who is currently the president of United Tribes Technical College, and Nancy Robertson, the secretary of the Spirit Lake Nation, described the situation on their reservation. In the state's brief at page 25, Assistant Secretary of State Silrum recognized that Native American communities lack residential addresses, and likewise on page 20 in our brief, or on doc 92 in the front of the district court, Representative Marvin Nelson recognized that in his district there's a lack of residential addresses. We also have Mr. Elvis Norquay who's been in and out of homelessness and has had a hard time maintaining a permanent address. Of course, he's always got an address, though, right? If you read his declaration, the only fair reading of it, he lists street addresses all the time. Yes, what the record shows is that yes, Mr. Norquay, while he's been in and out of homelessness, he currently did have a residential address when the record was submitted. When I asked you about that, you said he can bring a facial challenge even though he has a street address. But now to say, to bring a facial challenge, he would have to show the statute's unconstitutional in all circumstances, wouldn't he? Yes, Your Honor, that's correct. Is he also bringing an as-applied challenge? That's correct. I think the challenges here are facial with regard to the property requirement. What property requirement? The statute requires one to have a fixed permanent dwelling. Which statute does it cancel? Where does it say fixed permanent dwelling? I don't believe I have it in front of me. North Dakota's definition of residence provides that in order to be a resident... It doesn't have any other abode at the end of that sentence if you're referring to 16.1 dash 01-04.2. Never seen such a long number, number everyone in the world. But it says every qualified voter, you're right, it starts with actual fixed permanent dwelling. I agree with you, counsel. But it ends with any other abode. Abode is pretty general, counsel. Your Honor, yes. Abode is much broader, but in the plain language... Why are you telling us that there's a property requirement with a fixed permanent dwelling? This is a complicated case. If you could be accurate, it would be helpful. Well, it's not only that you have to have that. The definition of an abode is a home, which would sound like a permanent dwelling, but it's not just that you have to have an abode or a fixed permanent dwelling. It's also that it must have a street address and it must be current. And we know that there are many places because of the district court found, there are places in North Dakota that do not have residential street addresses and that there are homeless people in North Dakota that don't meet these requirements. Okay, but none of those people is a plaintiff. So how is it that any of your plaintiffs have standing to complain about those things? Again, Your Honor, our position is that just putting that requirement in front of the voters and making them satisfy that qualification is a sufficient injury, sufficient burden to maintain that for purposes of voting to provide them standing. With regard to whether or not this definition of residence is proper, what we can look at is Crawford, and it really sets out how we determine whether or not this definition of residence is invidious. And what Crawford says is that if there are requirements that are unrelated to voter qualifications, then they are invidious and cannot survive even rational basis review. And what we know from North Dakota's definition of residence is that someone can live in North Dakota at a house and it merely doesn't have a residential address, but they would not be qualified to vote because they don't have an address in that house. Or they may be homeless and live at a park and don't have an abode or a fixed permanent dwelling, and that park may not have a residential address, so they'd never be qualified to vote. But that doesn't tell us whether or not those people have lived within the precinct for 30 days because many people may have lived within the precinct for 30 days. They merely just don't have the address to show that they've lived within the precinct. Maybe I misunderstood, but I thought that part of your argument was not just the residential street address, but requiring that RSA on the identification itself, and the district count court made a number of findings about the difficulties in obtaining identifications. Did I misunderstand a part of your argument that those two were integrated? No, I think they exactly are integrated, and the district court did make many different findings on the substantial burdens in order to obtain an ID, and having a permanent dwelling or an abode with an address is just merely one of those burdens. There are several others that I think are worth mentioning, and that's that there are no free voter IDs in North Dakota. What about the non-driver's license that I just heard by statute has no fee? Well, the district court was also presented with that information, but also with other information as well. First of all, the fact. Is it a non-driver's ID in North Dakota and you don't have to pay for it? That's not true. He told us the statute says that. What do you think the statute says? Well, I believe on the face of the statute it might say that. It says it right out. Except for a duplicate or replacement card, the director may not charge a fee to provide a non-driver photo ID card to an eligible applicant. I don't think there's a might, but go ahead. Why doesn't that clearly show that you can get a free non-driver's photo ID? I appreciate that, and the statute does say that to your honor, but what in application and in practice is what the district court found is that North Dakota is still charging for IDs. Where did they find that? I saw the reference to that, but are you sure he found that they're charging for that? He said... Can you one second, your honor? I believe that's in the state's appendix on page 263 and 264. What page of the order, if you know? April 3. I don't know the page of the order. I only have the page of the appendix in front of me. I believe it's page... Page 13 and 14 of the order. Thank you. That's where he says, Silrum said in his affidavit that state non-driver ID cards are issued at no charge, but offers no authority for this statement. Of course, it would have been helpful if he had cited the statute, but apparently he didn't. Then the judge goes on and says this fact is contradicted by the North Dakota DOT website, which reveals a fee for the ID. Is that in the record, the non-driver ID, or is that the judge doing his own website research? I do not remember that the website is in the record, but what is in the record is that several of the plaintiffs were charged for IDs, including well, many of them were charged for tribal IDs, but Dorothy Herman went to get a non-driver's ID. She, of course, went several times to the driver's license site and was unable to, given the limited hours, but eventually was able to get a non-driver's ID, which is supposed to be free, but she had to pay $8 for her ID. So what we see in application is... Where is that in the record? Who's the Dorothy Herman, you say? Yes, Your Honor. I don't have that exact citation in front of me. I apologize for that. Okay, well... Well, you'd be happy if the state gave them a free one, right? We would be happy if the state provided free IDs to all voters in the state, and I think North Dakota... No, no, I'm talking about the non-driver's thing we're talking about. Yes, I think we would be happy for free voter IDs, non-driver IDs. Well, counsel, don't say voter ID, because that's different. Non-driver IDs, Your Honor. Do you think it's the same? I should ask you a question instead of making a statement. Do you think that the non-driver's license that they give, non-driver's ID, it's a voter identification in North Dakota? Yes, Your Honor, and there's only three voter IDs that are permissible, a driver's license, a non-driver state ID, or a tribal ID, and in every instance there's a fee. Could you address this point that Mr. Briefly alluded to in the briefs, and that is that the injunction on page 15 refers to, quote, another form of identification that includes either a current residential street address or a current mailing address? What's your understanding of what forms of identification would be covered by that? Well, I think the district court was allowing tribes to issue other forms of identifications if they could. He does say later in the order a document letter writing issued by a tribal authority. Yes, Your Honor. Do you think it's limited to that? It says another form of identification. Well, I think the state's concern is whether or not someone can draw on a piece of paper their name and bring it and try and vote, and I think what we see is that in several instances the state has in fact trusted voters to confirm that they're qualified. So you think it allows that? You think a voter could just write a statement that I reside at such and such a place or I have a P.O. box? I don't agree with that literal interpretation of the judge's order. I think it has to be an identification. Does it have to be issued by a government authority or can it be someone vouching? What do you think it means? Well, I think in the context it probably wouldn't be someone vouching, but I think given the context of all the other IDs, the supplemental documents that show addresses and has reference to tribes being able to issue other types of things, I think it would have to be in line with those types of documents, and it couldn't just be someone writing on a piece of paper that this is my name and I'm qualified to vote. I think it would have to be an identification that is more official than that. What about a piece of mail that had a P.O. box on it? Yes, Your Honor. I believe that would be exactly something that would satisfy that requirement. You think that would be a form of identification? Yes, Your Honor. But you don't think, what if the postmaster wrote a note and said I verify that this person has P.O. box number 12 at the post office? I think if the postmaster wrote on letterhead that that was the case, I do think that would satisfy that requirement. But not if the next door neighbor wrote? No, I don't believe that we would interpret the statute in that way, no, Your Honor. No, it's not a statute, it's just an order. It's a court's order, I apologize. I'm just wondering how the secretary should interpret it. That's one concern I think that's being raised, is how will the people at the polls know what they can take and what they can't take, if it's just another form of identification. Yes, so again, I think given the context of all the various forms that have been laid out, whether it's mail, paychecks, things like this, like that, or something on official letterhead. Well, it's easy if it's one that's listed, but we're talking about ones that aren't listed. Right, and if they have the P.O. box address or something that can be utilized to show that someone lives within North Dakota or has that address. I naively thought that it says here the affidavit of James Sillrum says that the Secretary of State's already interpreting the law to apply for a whole list of these. Is that true? The Secretary of State asserted in its briefing that it was interpreting the law in that way, but that was the first time that we had seen anything where the law was interpreted in such a way. There's no official regulation or... To take what things now, exactly. He was interpreting it to encompass what? Tribal IDs, more forms of allowing tribes to issue broader forms of acceptable voter IDs. So it's the tribal letters, not the piece of mail. Yes, Your Honor, that's correct. The state has asserted that it was interpreting the statute in that way, but we hadn't seen any official regulation or assertion or publication that indicated he had done that. In fact, the state's own advertising shows a tribal identification, a picture of someone holding a card, as what a tribal ID is. As the court recognized, that would be very dangerous for someone to rely on that, and for poll workers to rely on that when there hasn't been any official pronouncement to that effect. The tribal ID would have, at a minimum, the name and date of birth, correct? Yes, Your Honor. I believe all tribal IDs do have that in North Dakota. Would we need to read the district court's injunction to include date of birth in the identification? In other words, you couldn't come up with you couldn't come to vote with a piece of mail that had your post office box and name. You still need the date of birth, do you not? Yes, I think you would need to show that you're over the age of 18. Right, so I guess I'm kind of pushing on how minimal this set of identification documents might be. Even if you brought that, even if you brought the mail that had the PO box, or even the letter, frankly, from the postmaster, you've got to get something in there with your date of birth, correct? Yes, I believe that would be the case if you're requiring Well, you're switching now. So this is the problem for the people at the polls. We've got 10 minutes here from yes, the mail is good enough to no, it's not good enough. What are we supposed to do? Right. Well, I agree with that. I think what we're seeing here is what the district court found was that thousands of people were at risk, and in its last, through utilizing its last fail-safe mechanism, 16,000 voters utilized that fail-safe, and so the district court saw a clear legal obstacle that many people would not be able to meet, and was balancing the interests of voters against those of the state, and what the court saw was the clear legal obstacle of people that could not vote without residential street addresses, and it was providing relief to those voters that it was very concerned about this requirement that you must have a residential street address when it found that there are many places that don't have that in North Dakota. What forms of identification are out there that include a PO box and a date of birth? Well, tribal IDs are one form of ID, expired IDs. There could be a Veterans Affairs card that may only have your date of birth and your name. I believe a passport. I think there's I don't have all of them in my mind, but I believe there are many that would have your identification and your birth date on there. And they would have post office boxes on them? They may or may not have post box offices. For the tribes in North Dakota, many people only have their PO box addresses on their tribal IDs, and that's what the district court found twice, but some tribes may have no addresses on their ID. They may only have a person's name and birth date on there with their ID. It depends a little bit on where you're from and which tribe you're from in North Dakota, but we know that thousands of people lack qualifying identifications. At least 5,000 native voters and nearly 65,000 non-native voters lack qualifying identification that would have a residential address because of the residential address requirement, but they would otherwise be allowed to vote except for that requirement. Do I have one category that the district court would allow under this most recent injunction is an ID that had your name and date of birth, which you've listed a few, I think, tribal ID, military ID, then you could supplement with a piece of mail? Is that what you're talking about with a PO box? Yes, I agree with that assertion, yes. But do you read the district court's injunction as reading out the initial requirement of an ID with the name and date of birth? No, I don't read it that way. I apologize if that's how I've come off, but I don't think we would interpret it as you just do away with all the other requirements and all you have to show is a letter with a PO box if it doesn't have your other qualifications on there, at least under this district court order. I think under the previous order and under other systems that are available, that would be a case if there's an affidavit that someone could sign that was previously in place or if someone could vouch for you, I think these less restrictive alternatives would do away with that because you would have another way to satisfy the state's interest. Well, I thought the order said it has to be a form of identification that includes the mailing address. I'm not sure why you think that a document that has a name and date of birth plus a separate piece of mail would be included in a form of ID that includes a mailing address. Well, I think what the district court was only providing for as many forms of ID that would be acceptable so it wasn't entirely enjoining the statute as it was written. I think the statute would allow for other supplemental documents that would have a PO box. Therefore, the district court's order, the way we interpret it, was trying to broaden what was acceptable in North Dakota that would be utilized. As long as someone could show they're over 18, their name, and they have a residential or PO box address, then they should be entitled to vote. I think that's how we would interpret the district court's order in a very broad manner that way so that we can ensure everyone can vote in North Dakota. Well, again, on supplemental documents, the district court says the Secretary of State interprets the new law to allow for supplemental documents. Do we have a dispute on supplemental documents? No. I believe that the... I'm not sure there is a dispute on supplemental documents, Your Honor. Thank you. Eula, I think if I understand you correctly, you've also argued in the original preliminary injunction. Are there terms of that injunction? Yes, Your Honor. I think if this court were to... What are the grounds for that? How could we go back to what was before? Maybe you like that better as a remedy. I don't know, but how would we do that? Well, the first injunction was never appealed, and the only reason that the district court dissolved it was because it was providing relief in its current order. And there's a new law. The 2018 order addresses a new law. That's right. That's for two reasons. Well, I think we would disagree that the reason the district court's order dissolved the first one was that because it was providing relief, not because I think the district court clearly recognized that the new law placed the same exact burdens in front of the voters that the old law did. The only reason it dissolved the first one was because it was providing the relief in the second order. I think the current law has never been utilized without providing these fail-safe mechanisms that the district court provided or these other broader forms of ID. This is a system that's never been in place. There's an election that starts on September 27th. And so I think the state is familiar with what the district court provided previously, which was an affidavit fail-safe that had been in place for 100 years. But the legislature repealed that, right? Yes. You're saying the legislature can't repeal an affidavit requirement, right? No, that's not what I'm saying. That's what it comes down to, the way you argue to reinstate the first. I thought about this a long time because it is attractive. But isn't that what you really argue is they can't do an affidavit? The legislature can't repeal an affidavit requirement? And how do states have an affidavit requirement after an election? I bet that's a none too, huh? Well, I think what we're asking for is if you're not going to preserve the status quo, that we should go to the status quo ante, which is what was in place before the district court's order. And that was its previous order. This new law has never been in place. It's never been utilized. The law before that was never in place either, right? Say that again, Your Honor. The law before that that was enjoined in 2016 was never in place either, right? It was in place. It was enforced in 2014 and then made slight modifications in 2016. What... And maybe this isn't in the record or wasn't discussed, but across the states, what are the most common fail-safe mechanisms for persons who come to vote without the proper ID? Is it the affidavit or declaration process? I think for the voter ID states, the affidavit is probably the most common where if someone doesn't have their ID, they can swear that they're qualified to vote. And other states also allow for a voucher where if you don't have your ID or you can't show your address, someone can vouch for you. But aren't those then provisional ballots? They're not ballots like North Dakota used to have that are mixed in immediately. In Iowa, I think the same day registration would allow someone to have a voucher and they'd get a regular ballot, not a provisional. My understanding is that they would only get a provisional if they didn't have someone vouch for them. So they couldn't show through the person vouching that they were qualified. They otherwise can't show they're qualified. Then they get a provisional ballot. The vast majority of states in this country don't have same-day registration, right? There are 17 states that do provide the vast majority of states. Thank you. It takes a yes or no. Go ahead. I thought he was questioning whether that's vast. That's okay. It is a majority. It is. Go ahead. Your Honor, I see my time is winding down. Unless there are other questions... Sorry. I think we would ask that the district court's order be affirmed. I think there are many factual findings the district court made that are supported and therefore not clearly erroneous and that we would ask that the district court's order be affirmed so that voters are allowed to vote in the next election. Thank you. Hold on. Did you have any other questions? I'm fine. Very well. Thank you. We appreciate your coming on such short notice too. I think Mr. Nicolai's time has expired too. Do you want to hear any rebuttal? Your call. Do you have anything you want to say? I have one point. We'll give you one minute for one point. Thank you, Your Honor. The only thing that I heard that I don't think Mr. Campbell talked about that hasn't been addressed in the briefing that I've already had and I'd rely upon that is the point about Dorothy Herman paying the $8 fee. If that in fact happened, the cause of action would not lie, the indictment isn't against the statutory requirement. It would be against the Department of Transportation for violating state law by not issuing that fee or that replacement card free of charge. That's the only additional point I'd make, Your Honor. I think he was citing it as evidence that the state's practice is not in conformance with the statute that you're quoting. I think that was the point. I don't know what you mean by the cause of action. If the state isn't following the statute, then there might be a cause of action that they're violating the Constitution by imposing the equivalent of a poll tax. That action would lie against the Department of Transportation, not the Secretary of State. It's all in state. We'll think about that. That's all, Your Honor. Thank you. Very well. The case is submitted. Again, thank you to all counsel for coming on such short notice and preparing so well. We apologize for any shortness of discussion here, but we did give you a lot of time. I think it was helpful to the court, so we'll be in recess and deliberate and file an order of opinion in due course. Thank you.